UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHERYL A. MONAHAN,
    *Plaintiff*,

v.

NANCY A. BERRYHILL,
    *Defendant*.

No. 3:18-cv-00207 (JAM)

**RULING AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Cheryl A. Monahan asserts that she is disabled and unable to work due to several conditions. She filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, who denied Monahan's application for supplemental security income. For the reasons set forth below, I will deny Monahan's motion to reverse the Commissioner's decision (Doc. #25), and grant the motion to affirm the Commissioner's decision (Doc. #28).

**BACKGROUND**

I refer to the transcripts provided by the Commissioner. *See* Doc. #20-1 through Doc. #20-15. Monahan filed an application for supplemental security income on October 22, 2014, alleging a disability beginning on August 15, 2013. Doc. #20-7 at 3. Monahan's claim was initially denied in February of 2015, *id.* at 18, and denied again upon reconsideration on September 11, 2015, Doc. #20-8, at 14–16. She then filed a request for a hearing on September 21, 2015. *Id.* at 17–18.

Monahan appeared and testified at a hearing in New Haven before Administrative Law Judge (ALJ) Deirdre R. Horton on December 2, 2016. Doc. #20-6 at 2. Monahan was represented by counsel. *Ibid.* On March 22, 2017, the ALJ issued a decision concluding that

1

Monahan was not disabled within the meaning of the Social Security Act. *See* Doc. #20-3 at 24. The Appeals Council denied Monahan's request for review on December 6, 2017. *Id.* at 2. Monahan then filed this case on February 2, 2018. Doc. #1.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does

not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that Monahan was not disabled within the meaning of the Social Security Act. At Step One, the ALJ concluded Monahan had not engaged in substantial gainful activity since October 22, 2014, the date of her application for benefits. Doc. #20-3 at 14. At Step Two, the ALJ found that Monahan suffered from the following severe impairments: "bilateral Carpal Tunnel Syndrome, Mild; Osteoarthritis; Depressive Disorder; and Post-Traumatic Stress Disorder." *Ibid.* The ALJ also took note of Monahan's history of drug addiction and alcoholism, but did not find that history to be a severe impairment. *Id.* at 15.

At Step Three, the ALJ determined that Monahan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid.* The ALJ considered Monahan's physical impairments as well as her mental impairments. *Ibid.*

Moving to Step Four, the ALJ then found that Monahan "had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to

3

limited lifting and carrying to 10 pounds. She is also limited to occasional ramps and stairs, ladders, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to frequent handling and fingering. She is also limited to simple routine tasks. She should work in an environment with only minor changes in routine. The claimant works best on tasks alone, rather than in groups or teams and she should have only occasional interaction with the general public." *Id.* at 16–17. At Step Four, the ALJ concluded that Monahan had no past relevant work that she could be capable of performing. *Id.* at 22.

At Step Five, after considering Monahan's age, education, work experience, and residual functional capacity ("RFC"), the ALJ concluded that there were jobs that Monahan could perform that existed in significant numbers in the national economy. *Id.* at 23. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert. *Ibid.* The ALJ ultimately held that Monahan was not disabled within the meaning of the Social Security Act. *Id.* at 24.

### DISCUSSION

*The ALJ's adherence to the treating physician rule*

The ALJ gave "limited weight" to the opinion of Dr. Marienfield and only "minimal weight" to the opinion of Dr. Choi and the joint opinion of treating clinician Terry Lenczycki and Dr. Savage. Doc. #20-3 at 21. Monahan argues that the ALJ erroneously failed to give controlling weight to the opinions of these treating physicians. Doc. #25-3 at 1–2.

The treating physician rule requires that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating

4

physician's opinion is not given controlling weight, "the ALJ must explicitly consider" a number of factors to determine the proper weight to assign, including "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (*per curiam*) (internal quotation marks and citation omitted); *see generally* 20 C.F.R. § 404.1527(c). After considering these factors, the ALJ is then required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion . . . . Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129–30 (internal quotation marks and citation omitted).

The ALJ gave Dr. Marienfeld's opinion limited weight because it was "not a function by function analysis." Doc. #20-3 at 21. But the Social Security Administration's regulations sweep broadly, defining medical opinions as reflecting judgments about the nature not just of what a claimant can functionally do, but also "symptoms, diagnosis[,] and prognosis." 20 C.F.R. § 404.1527(a)(1). Even if Dr. Marienfeld did not conduct a function-by-function analysis of Monahan's condition, that failure does not reflect on Dr. Marienfeld's other opinions about, for instance, Monahan's PTSD symptoms. *See* Doc. #20-13 at 24.

Nonetheless, even if the ALJ erred by relying on this premise to reject Dr. Marienfeld's opinion, that error was harmless. Although the ALJ gave Dr. Marienfeld's opinion limited weight, both the ALJ and Dr. Marienfeld concluded that Monahan experiences depression and PTSD. *Compare* Doc. #20-13 at 24 *with* Doc. #20-3 at 14. Dr. Marienfeld described the vast majority of Monahan's mental states and characteristics as normal, noting only sometimes reduced abilities as to coping skills, handling frustration, and the ability to persist in simple

5

activities without psychological interruption. Doc. #20-13 at 25–27. The ALJ concluded from other evidence that Monahan had "moderate limitation[s]" as to understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Doc. #20-3 at 15–16. It is true that the ALJ did not appear to incorporate Dr. Marienfeld's statement significantly in determining Monahan's residual functional capacity, but the statement bore little on that determination other than what the ALJ had already concluded in assessing Monahan's impairments, and the ALJ's conclusion was consistent with the conclusion of Dr. Marienfeld. Because remand is unnecessary where the excluded evidence is "essentially duplicative of evidence considered by the ALJ," rather than significantly more favorable to the plaintiff, there is no need to do so here. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

The ALJ discounted Dr. Choi's opinion as "not supported by the medical evidence of record." Doc. #20-3 at 21. The ALJ reached this conclusion in part because the ALJ perceived Dr. Choi's medical source statement as internally inconsistent with other medical records: the ALJ read the statement to claim that Dr. Choi had treated Monahan every two to three months for three to four years, while another aspect of the record indicated that Dr. Choi had only treated Monahan since 2015. *See* Doc. #20-3 at 21 (citing Doc. #20-12 at 90; Doc. #20-14 at 236). Monahan contends that this is a misinterpretation of the medical source statement, which is better understood to mean that Dr. Choi had only seen Monahan every two to three months, but that she had been seen at the Yale Primary Care Center for three to four years. Doc. #25-3 at 7. This may be true, but the ALJ also discounted Dr. Choi's opinion because, although Dr. Choi's opinion acknowledged Monahan's joint pain, her pain improved over the day and could be controlled with medication. *See* Doc. #20-12 at 91 (stiffness lasts five to six hours and is

6

managed with medications); Doc. #20-14 at 4, Doc. #20-12 at 91 (numbness and tingling in hands most noticeable in morning and "shaking her hands relieves the numbness and tingling"). Because response to treatment can be substantial evidence against the severity of a condition, *see, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (*per curiam*) ("Of course, a remediable impairment is not disabling."), the ALJ had substantial evidence contradicting Dr. Choi's report.[1] Therefore, the ALJ did not inappropriately decline to assign Dr. Choi's opinion controlling weight.

Still, the existence of substantial evidence did not absolve the ALJ of her duty to consider the regulatory factors in determining how to weigh Dr. Choi's testimony. While the ALJ may have been mistaken by imputing an inconsistency to the report regarding the length of the treatment relationship, the ALJ did take explicit note of the first time that Dr. Choi treated Monahan in 2015. *See* Doc. #20-3 at 21. The ALJ explained how Dr. Choi's opinion was contradicted by other medical evidence in the record, including notes taken both by Dr. Choi and by other medical professionals. *Ibid.* Thus, it is clear that the ALJ considered the extent of the treatment relationship between Monahan and Dr. Choi, the evidence supporting Dr. Choi's opinion, and the contradictory evidence in the record. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (no "slavish recitation of each and every factor" is required "where the ALJ's reasoning and adherence to the regulation are clear."); *Scott v. Berryhill*, 2018 WL 1608807, at *4–*5 (D. Conn. 2018). While the record does not reflect that the ALJ considered Dr. Choi's role as a specialist, *ibid.*, the record also indicates that Dr. Choi was a resident, rather than a

---

[1] For the same reasons, Monahan's argument that the ALJ inadequately addressed her claims of pain is unavailing. *See* Doc. #25-3 at 21–23. While Monahan cites several authorities from outside this Circuit on how to consider a claimant's testimony about pain, the Second Circuit has discounted testimonial evidence of pain where the medical record showed that the claimant was able to manage the pain with medication and other forms of physician-supported treatment. *See, e.g.*, *Koch v. Colvin*, 570 F. App'x 99, 102–03 (2d Cir. 2014) (discounting a claimant's subjective account of pain she experienced where the medical record showed improvement in her condition with treatment); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (*per curiam*) (same).

7

specialist, *see* Doc. #20-14 at 38. While the ALJ should have more clearly noted this factor, Dr. Choi's lack of specialized credentials would, if anything, have entitled his opinion to less weight. There is thus no need to remand the decision on the basis of how the ALJ weighed Dr. Choi's testimony.

The ALJ gave minimal weight to the joint opinion of Lenczycki and Dr. Savage, finding it, too, to be unsupported by the record. Doc. #20-3 at 21. The ALJ discounted the opinion's conclusion that Monahan would be off task for 30% of the workday, five days per week, because of her combined mental and physical limitations. *Ibid.* The ALJ found that because Lenczycki and Dr. Savage had not treated Monahan for physical problems, they were unable to speak to her physical limitations, and also found that Lenczycki and Dr. Savage's conclusion about Monahan's mental condition was contradicted by numerous normal mental status reports in the record. *Ibid.* (citing Doc. #20-10 at 17; Doc. #20-11 at 37, 41, 57, 60, 63, 69; Doc. #20-13 at 159; Doc. #20-14 at 205). While the ALJ did point to substantial contradicting evidence, she again could have been clearer in considering the regulatory factors.

Still, the record does make evident that the ALJ considered the extent of Lenczycki and Dr. Savage's treatment relationship with Monahan, the dearth of evidence supporting their conclusion about Monahan's physical condition, the substantial evidence contradicting their conclusion about Monahan's mental condition, and Dr. Savage's role as a specialist. In addition to acknowledging the scope of the treatment that Lenczycki and Dr. Savage provided, the ALJ also noted their credentials. Doc. #20-3 at 21. While Lenczycki is not a doctor, in stating that Dr. Savage is a doctor who only treated Monahan's mental conditions, the ALJ knew that Dr. Savage specialized in psychiatry. *See Scott*, 2018 WL 1608807, at *5. And while the Social Security Administration "generally give[s] more weight to the medical opinion of a specialist about

8

medical issues related to his or her area of specialty," 20 C.F.R. § 404.1527(c)(5), because Lenczycki and Dr. Savage's opinion extended to a combination of mental and physical impairments outside of Dr. Savage's area of expertise, *see* Doc. #20-14 at 243–244, the ALJ had substantial contradictory evidence about Monahan's physical condition to decline to give Lencyzcki and Dr. Savage's opinion extra weight because of Dr. Savage's specialization as a psychiatrist, *see* Doc. #20-3 at 18–20. Accordingly, the ALJ did not violate the treating physician rule as to Lenczycki and Dr. Savage's opinion.

### *The ALJ's Step Three analysis*

Monahan next argues that the ALJ erred at Step Three when she concluded that none of Monahan's conditions met the severity of those in the "Listings." Doc. #25-3 at 10–12. Monahan principally takes issue with the ALJ's conclusion about her physical condition. The ALJ concluded that Monahan's joint disease did not medically equal the appropriate listing because there was no evidence of "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint," and that there were no "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint" such that Monahan was unable to walk effectively, or to perform arm and hand movements effectively. Doc. #20-3 at 15.

Monahan relies on *Howarth v. Berryhill*, 2017 WL 6527432 (D. Conn. 2017), to argue that remand is warranted when, at Step Three, the ALJ "merely stated that [the ALJ] considered whether the [criteria] were satisfied and then quoted the criteria from the listing." Doc. #25-3 at 11 (quoting *Howarth*, 2017 WL 6527432, at *5). But Monahan's argument misses an important distinction: unlike in *Howarth*, the ALJ here did more than simply list criteria. Rather, she also

9

spoke to a lack of evidence in the record that those criteria were met. Moreover, this conclusion was supported by substantial evidence.

Section 1.00 of the Listings, which deals with musculoskeletal impairments, contemplates the ability to walk effectively as encompassing the "activities of daily living" outside one's house, while the inability to perform effective arm and hand movements encompasses the inability to feed oneself, take care of personal hygiene, or handle papers and files. *See* § 1.00B2(b)–(c). The ALJ noted that Monahan "has been independent with maintaining her activities of daily living, including dressing [ and bathing]. She goes grocery shopping, manages her finances, and attends her medical appointments and NA/AA meetings." Doc. #20-3 at 20. The ALJ relied on Monahan's statement of daily activities in reaching this conclusion, *ibid.*, which was consistent with the ALJ's results, albeit indicating that a number of activities did pose some difficulty. *See* Doc. #20-10 at 14–22. Accordingly, because "the absence of an express rationale does not prevent" a court from upholding the ALJ's impairment determination when it is supported by substantial evidence, there is no need to remand the decision of the Commissioner because of the ALJ's Step Three analysis.[2] *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (*per curiam*).

### *The ALJ's Step Five analysis*

Monahan claims that the ALJ's Step Five analysis was defective in several respects. Doc. #25-3 at 13–21. First, Monahan argues that the ALJ failed to limit her hypothetical to the vocational expert to work that did not require lifting more than 10 pounds. *Id.* at 13–14. Monahan argues that this means the ALJ could not have properly found that Monahan could

---

[2] Monahan argues that the ALJ never properly determined whether Monahan "medically equaled" the Listings, because only a doctor can make that determination. Courts, however, regularly uphold Step Three determinations about medical equivalence. *See, e.g.*, *Watson v. Berryhill*, 732 F. App'x 48, 50–51 (2d Cir. 2018).

have performed the light work of a storage facility rental clerk or package sorter. *Id.* at 14. The Commissioner does not disagree as to these two positions. Doc. #28-1 at 34.

Monahan next argues that the vocational expert's numerical data were unsupported for the remaining two jobs that the ALJ found Monahan could perform: bench hand and table worker. Doc. #25-3 at 14–17. But in order for an ALJ to reasonably credit testimony from a vocational expert, it is sufficient that "[t]he vocational expert identified the sources [she] generally consulted to determine such figures." *Bradley v. Berryhill*, 2017 WL 3314000, at *3–*4 (D. Conn. 2017) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008)); *see also McIntyre*, 758 F.3d at 152 (noting that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally" and concluding that "the vocational expert was not required to articulate a more specific basis for his opinion, and the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record").

Here, the vocational expert testified as to her methodology, which included combining information from the Job Browser Pro database with her professional experience, Doc. #20-6 at 45, and the ALJ considered and overruled Monahan's objections to the expert's testimony, *see* Doc. #20-3 at 23; Doc. #20-6 at 36–37. The vocational expert arrived at her conclusion that 100,000 table worker positions and 206,600 bench hand positions existed in the national economy by estimating the number of positions in a broader category of fabrication workers listed in the Dictionary of Occupational Titles. While Monahan's counsel contends for the first time in this appeal that his personal copy of the Job Browser Pro database provides a more granular account of the number of workers in each position that is several orders of magnitude

11

smaller than the vocational expert's estimate, this new assertion on appeal is not substantial evidence in the record that undermines the vocational expert's testimony.[3] *See* Doc. #25-3 at 16.

Monahan also takes issue with the design of the ALJ's hypothetical to the vocational expert. The ALJ found that Monahan had moderate limitations as to a number of mental aspects, including concentration, persistence, and pace. Doc. #20-3 at 15–16. The ALJ did not, however, include those limitations in the hypothetical she posed to the vocational expert. *See* Doc. #20-6 at 40–41.

This was harmless error. The Second Circuit has held that "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre*, 758 F.3d at 152. But the Second Circuit has also held that "an ALJs failure to incorporate non-exertional limitations in a hypothetical" is harmless when "(1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work; or (2) the hypothetical otherwise implicitly accounted for a claimant's limitations in concentration, persistence, and pace." *Ibid.* (internal quotations and citation omitted). One way to take into account a claimant's ability to undertake simple, routine, low-stress tasks is to explicitly limit a hypothetical to those tasks. *See ibid.* Here, the ALJ included in the hypothetical a stipulation that any work be "limited to simple, routine tasks." Doc. #20-6 at 40. Moreover, while the hypothetical itself was not limited to unskilled work, all of the jobs the

---

[3] Monahan cites a non-precedential Ninth Circuit decision, *Farias v. Colvin*, 519 F. App'x 439 (9th Cir. 2013), to argue that I should summarily reject the vocational expert's estimates as unreasonable. *See* Doc. #25-3 at 15. Notwithstanding that the Second Circuit's binding precedents guide the Court's evaluation of the ALJ's decision, *Farias* was also an extraordinary case, where the court relied on the implausibility of an estimate of the number of head dance hall hostesses in the national economy to determine that "[t]he most plausible explanation [for the ALJ's decision] appears to be that the [vocational expert] properly testified that a person with Farias' characteristics and [residual functional capacity] could perform the job requirements of head dance hall hostess but erroneously provided employment data for restaurant hostess." *Id.* at 440.

ALJ found that Monahan could perform were unskilled. Doc. #20-3 at 23. Accordingly, while the ALJ should have included Monahan's non-exertional limitations in her hypothetical to the ALJ, there is no need to remand the decision of the Commissioner on this basis.

## CONCLUSION

For the foregoing reasons, Monahan's motion to reverse the decision of the Commissioner (Doc. #25) is DENIED, and the Commissioner's motion to affirm the decision of the Commissioner (Doc. #28) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 31st day of January 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge